UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| DALTON DONOVAN MILLER, | Case No. 5:26-cv-02461-DTB |
| Petitioner, | **ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| MARKWAYNE MULLIN, Secretary of Homeland Security, et al., | |
| Respondents. | |

**I.**

**PROCEDURAL HISTORY**

On February 5, 2026 (two days after Petitioner was detained by United States Customs and Enforcement ["ICE"] in Baltimore, Maryland), petitioner Dalton Donavan Miller ("Petitioner") filed a Petition for Writ of Habeas Corpus, accompanied by exhibits, in the United States District Court for the District of Maryland. (Miller v. Noem, Civ. No. 1:26-cv-491-GLR (D. Md.) ["Miller"], docket numbers 1 through 1-2; see Docket No. 1 at ¶¶ 45-46; Docket No. 1-6 at 1).[1] That habeas petition raised the following claims for habeas relief: (1) Petitioner's

---

[1]    Neither party provided the Court with a copy of that habeas petition.

1

continued detention violates 8 U.S.C. § 1231(a)(6), as interpreted by Zadvydas v. Davis, 533 U.S. 678 (2001); (2) Petitioner's detention violates the Due Process Clause because there is not a significant likelihood of removal in the reasonably foreseeable future; (3) the removal of Petitioner to a third country would violate Petitioner's right to procedural due process; and (4) the revocation of Petitioner's release on supervision and the re-arrest of Petitioner without any explanation and without an opportunity to respond violate 8 C.F.R. § 241.4(l) and his right to due process under the Fifth Amendment. (Miller, docket number 1 at 9-10).  That habeas petition sought, among other things, the following relief:  (1) The issuance of an order to show cause directing Respondents to justify Petitioner's detention; (2) a preliminary and/or permanent injunction enjoining Respondents from removing Petitioner to Jamaica or any other country without first providing him with a reasonable fear interview; (3) ordering Petitioner's release from physical custody under the same terms as his prior Order of Supervision; and (4)  awarding Petitioner his costs of suit.  (Id. at 11; see Docket No. 1-6 at 1).[2]

On March 24, 2026 (following a response and reply, Miller, docket numbers 12 through 12-9 and 14 through 14-6; see Docket No. 1-6 at 1-2; Docket No. 1-10 at 1), the District Judge denied as moot Petitioner's request for a show cause order, denied Petitioner's request for a preliminary/permanent injunction, denied Petitioner's request for attorney's fees and costs, and reserved judgment as to Petitioner's request for release from physical custody under the same terms as his prior Order of Supervision.  (Miller, docket number 15; see Docket No. 1-6 at 3).

On May 5, 2026 (following the filing of Petitioner's "Notice of Subsequent Developments and Supplemental Authority" and a "Response to Petitioner's Notice

---

[2]    For the parties' pleadings and exhibits, the Court cites to the CM/ECF pagination at the top of each page.

2

[of] Subsequent Developments and Supplemental Authority" ("Response"), Miller, docket numbers 16 through 16-4 and 18 through 18-1; see Docket No. 1-10 at 1; Docket No. 1-5), the District Judge denied that habeas petition based on "consideration of the entire record in this case, including but not limited to [Petitioner's] previous aggravated felony convictions and ineligibility for a bond hearing under 8 U.S.C. § 1226(a), and the grounds cited by [the] [r]espondents" (Miller, docket number 19 at 1-2, citing docket numbers 12-1 and 18; see Docket No. 1 at ¶ 53), and ordered that the case be closed (Miller, docket number 19 at 2).

On May 8, 2026 (following Petitioner's transfer to Adelanto ICE Processing Center on an unspecified date, see Docket No. 1 at ¶¶ 5, 40), Petitioner, represented by counsel, filed a Petition for Writ of Habeas Corpus by a Person in Federal Custody pursuant to 28 U.S.C. § 2241 ("Petition") (Docket No. 1), accompanied by attached exhibits (Docket Nos. 1-1 through 1-11).  The Petition alleges the same claims for habeas relief and seeks the same relief as the prior habeas petition. (Petition at 20-26).

On May 15, 2026 (pursuant to General Order 26-05's expedited briefing schedule, see Docket No. 4), Respondents filed an Answer to the Petition ("Answer").  (Docket No. 7).  In the Answer, Respondents solely contend that the Petition "is essentially an appeal or collateral attack on the adjudication in Maryland" and therefore, should be dismissed without prejudice.  (Id. at 2-3).

On May 18, 2026, Petitioner filed a Reply.  (Docket No. 18).

Thus, this matter is now ready for decision.  For the reasons set forth below, the Petition is granted.

/ / /

/ / /

/ / /

## II.

## BACKGROUND

Petitioner is a native and citizen of Jamaica. (Petition at ¶¶ 5, 37). On August 12, 2016, Petitioner was placed on an order of supervision ("OSUP") pursuant to 8 U.S.C. § 1231(a)(3).[3] (Id. at ¶ 41; see Docket No. 1-2 at 1).

On October 10, 2023, following a remand by the Board of Immigration Appeals, an immigration judge ordered Petitioner's removal from the United States, granted Petitioner's application for withholding of removal based on the finding that Petitioner had established that it was more likely than not that he would be persecuted in Jamaica on account of his sexual orientation, and denying as moot Petitioner's applications for withholding and deferral of removal under the Convention Against Torture. (Docket No. 1-1; Petition at ¶ 38). That order was not appealed; it became final on November 10, 2023. (Petition at ¶ 39).

On February 3, 2026, Petitioner appeared for a scheduled check-in with ICE at the Baltimore Field Office and was detained by ICE without any explanation for the legal or factual basis of his detention; he was only told that ICE would soon start looking for a third country that was willing to accept him for removal. (Id. at ¶ 45).

---

[3]    8 U.S.C. § 1231(a)(3) provides that:
If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General. The regulations shall include provisions require the alien-- (A) to appear before an immigration officer periodically for identification; (B) to submit, if necessary, to a medical and psychiatric examination at the expense of the United States Government; (C) to give information under oath about the alien's nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate; and (D) to obey reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for the alien.

Prior to being detained, Petitioner attended all scheduled check-ins with ICE pursuant to his OSUP. (Id. at ¶ 52). Following the grant of his application of withholding of removal, Petitioner has not sustained any additional criminal arrests, convictions, or contacts. (Id. at ¶ 44).

Since Petitioner was placed on an OSUP, he has maintained stable housing and employment. (Id. at ¶ 42). On April 18, 2024, he was last issued a "category A10 Employment Authorization Designation (EAD)" (Docket No. 1-3), which was issued only after the determination was made that he "cannot be removed due to the refusal of all countries designated by the alien or under this section to receive the alien[.]" (Petition at ¶ 42, quoting 8 U.S.C. § 1231(a)(7)(A)). Petitioner is the father of a 7 year-old daughter who suffers from epilepsy, seizures, asthma, and chronic lung disease, and who relies on Petitioner. (Id. at ¶ 43). Since Petitioner has been detained, his mental health has deteriorated, he has lost over 25 pounds, he has complained to medical staff about chest pains and shortness of breath, and he has had no access to his medication. (Id. at ¶ 55; see Docket No. 1-11).

On March 3, 2026 (approximately one month after the filing of Petitioner's prior federal habeas petition), the Department of Homeland Security issued Petitioner a Notice of Revocation of Release, stating that his release has been revoked pursuant to 8 C.F.R. § 241.13(i) because he violated a condition of his release, specifically, on October 2, 2025, he "failed a tracker callback as required under [his] release." (Docket No. 1-2; Petition at ¶¶ 51-52). However, according to Petitioner, he had not violated any condition of his release. (Petition at ¶ 52; see Docket Nos. 1-7 through 1-9).

/ / /

/ / /

/ / /

5

On March 3, 2026, Petitioner was informed that he was being removed to Moldova. (Petition at ¶ 47). Through counsel, Petitioner promptly expressed a fear of removal to Moldova and requested a reasonable fear interview. (Docket No. 1-4; Petition at ¶ 47).

On March 9, 2026, prior to the scheduling of a reasonable fear interview, ICE's Enforcement and Removal Operations stated it currently did not have plans to remove Petitioner to Moldova. (Docket No. 1-4 at 1; Petition at ¶ 49).

When, on March 24, 2026, the District Judge denied Petitioner injunctive relief to prevent his removal to Jamaica or any other country without first providing him a reasonable fear interview, the District Judge stated that Petitioner, in a brief, had asserted that "Respondents attempted to have him removed to Moldova and, when requested, provided him with a reasonable fear interview." (Docket No. 1-6 at 2-3; Petition at ¶ 48). On April 30, 2026, after Petitioner had informed the District Judge that Petitioner had not received a reasonable fear interview, the government confirmed that Petitioner had not received a reasonable fear interview by stating that the government had no plans to remove Petitioner to either Jamaica or Moldova. (Petition at ¶ 50, citing Docket No. 1-5).

Petitioner is being detained at the ICE Processing Center in Adelanto, California. (Petition at ¶ 40; see https://locator.ice.gov/odls/#/results).

### III.

### LEGAL AUTHORITY

A writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).

6

A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001).  A noncitizen in the custody of immigration authorities may bring a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on the grounds of their detention violates the Constitution or other federal laws.  28 U.S.C. § 2241(c)(3); Zadvydas, 533 U.S. at 687-88 (federal courts retain jurisdiction to consider habeas relief under Section 2241 for noncitizens subject to detention following an order of removal).

Here, Petitioner has raised claims under the Due Process Clause of the Fifth Amendment, which prohibits deprivations of life, liberty, and property without due process of law.  See U.S. Const., amend. V.  These protections extend to noncitizens present in the United States.  See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.") (internal quotation marks omitted); Zadvydas, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings.") (internal quotation marks and brackets omitted)).  Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ."  Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation."  Zinermon v. Burch, 494 U.S. 113, 127 (1990).  Indeed, the Due Process Clause

provides both procedural and substantive protections.  See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process.") (internal quotation marks omitted).  To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976).  See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (applying Mathews to due process challenge to immigration detention, and noting that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context"); López v. Wofford, Case No. 1:25-cv-01226-KES-SKO (HC), 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) (collecting cases extending Mathews "to the context of immigration detention").  Under Matthews, courts weigh the following three factors: (1) "[T]he private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

### IV.

### DISCUSSION

As an initial matter, the Court rejects Respondents' contention in the Answer that the Petition should be dismissed because it "is essentially an appeal or collateral attack on the adjudication in Maryland" (see Docket No. 7 at 2-3).  Respondents

have failed to cite any authority that would preclude the Court from addressing the merits of the claims alleged in the Petition.  As such, Respondents have failed to meet their burden of establishing issue preclusion.  See Kendall v. Visa U.S.A. Inc., 518 F.3d 1042, 1050-51 (9th Cir. 2008) ("Issue preclusion prevents a party from relitigating an issue decided in a previous action if four requirements are met:  '(1) there was a full and fair opportunity to litigate the issue in the previous action; (2) the issue was actually litigated in that action; (3) the issue was lost as a result of a final judgment in that action; and (4) the person against whom collateral estoppel is asserted in the present action was a party or in privity with a party in the previous action.'") (citation omitted).  Moreover, the District Judge's bases for denying Petitioner's prior habeas petition – which were explicitly predicated on "consideration of the entire record in this case, including but not limited to [Petitioner's] previous aggravated felony convictions and ineligibility for a bond hearing under 8 U.S.C. § 1226(a) and the grounds cited by [the] [r]espondents" (Miller, docket number 19 at 1-2, citing docket numbers 12-1 and 18) – are unclear and conclusory.[4]

A.     **Petitioner's Fourth Claim Warrants Habeas Relief.**

As noted, in the fourth claim alleged in the Petition, Petitioner contends that the revocation of his release on supervision and his re-arrest without any explanation and without an opportunity to respond violated 8 C.F.R. § 241.4(l) and his right to due process under the Fifth Amendment.  (Petition at 23-24; see Docket No. 8 at 9-11).

/ / /

---

[4]     The Court notes that the respondents, in their filings, did not squarely address the portion of Petitioner's claim in his prior habeas petition alleging that the individual revoking Petitioner's OSUP did not have authority to do so (see Miller, docket number 1 at 10). (See id., docket number 12-1 at 10-11, docket number 18).

Given Respondents' election not to oppose or otherwise challenge the facts and merits of the claims in the Petition, the Court finds that Respondents have consented to the arguments raised in the Petition pursuant to Central District of California Local Civil Rule 7-12.  Accordingly, the Court considers the facts and contentions alleged by Petitioner to be unopposed.[5]

 1. Relevant Legal Authority.

ICE may revoke release when a noncitizen violates a condition of his or her OSUP.  8 C.F.R. §§ 241.4(l)(1), 241.13(i)(1).  When ICE revokes an OSUP, ICE is required to provide (1) notice of the reasons for revocation, and (2) an "informal interview promptly after his or return to [ICE] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3).  ICE also may revoke release when, "on account of changed circumstances, [ICE] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future."   8 C.F.R. § 241.13(i)(2).

"It is a well-known maxim that agencies must comply with their own regulations." United States v. Ramos, 623 F.3d 672, 683 (9th Cir. 2010); see also Delkash v. Noem, Case No. 5:25-cv-01675-HDV-AGR, 2025 WL 2683988, at *5 (C.D. Cal. Aug. 28, 2025) ("It is well-established that government agencies are required to follow their own regulations.") (citing United States ex rel Accardi v. Shaughnessy, 347 U.S. 260, 268 (1954)).  "Numerous district courts, including courts in the Ninth Circuit, 'have determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered.'" Gutierrez v. Noem, Case No. 5:25-cv-02668-DOC-RAO, 2025

---

[5] Respondents' non-opposition, in itself, can serve as a basis to grant the Petition.  See Orozco v. Warden, Adelanto Detention Facility, et al., Case No. 5:26-cv-02385-BFM, 2026 WL 1390443, at *1 (C.D. Cal. May 14, 2026) (citing cases).

WL 3247769, at *4 (C.D. Cal. Oct. 31, 2025) (citation omitted); see also Delkash, 2025 WL 2683988, at *5 ("A growing number of courts have unequivocally found that the government's failure to follow its release revocation procedures—in particular the failure to give a detainee the required notice and interview—renders the redetention unlawful. . . .  These procedures are not optional or discretionary; they must be followed, and failure to do so renders the detention unlawful.") (internal citations omitted).

  2 Analysis.

  Petitioner alleges that when he was taken into ICE custody, he was not provided any reasons for the revocation of his OSUP, he was not provided an opportunity to respond to the reasons for the revocation of his OSUP, and he was not given a prompt informal interview.  (Petition at ¶¶ 45, 72; Docket No. 8 at 11).  Indeed, as Petitioner asserts (see Petition at ¶¶ 47, 51), he was not served with the Notice of Revocation of Release until March 3, 2026 (Docket No. 1-2 at 2), more than one month after his detention.  Moreover, as Petitioner asserts and which the government conceded during the prior habeas proceedings (see Docket No. 8 at 11; Miller, docket number 12-1 at 11), Petitioner was not afforded a prompt informal interview.  (See Docket No. 1-2 at 2).  Since Respondents do not oppose the Petition, there is no evidence to dispute Petitioner's contention that ICE violated 8 C.F.R. § 241.4(l) and Petitioner's right to procedural due process.

  Moreover, as Petitioner contends (see Petition at 24), it does not appear that Vernon L. Liggins, who signed the Notice of Revocation of Release (see Docket No. 1-2 at 2), had the regulatory authority to revoke Petitioner's release.  See 8 C.F.R. § 241.4(l)(2) (giving such authority to the Executive Associate Commissioner and the district director); Ceesay v. Kurzdorfer, 781 F. Supp. 3d 137, 159-61 (W.D. N.Y. May 2, 2025) (finding that "there is no delegation order clearly giving [the assistant]

11

field officer] the authority to revoke release, and even if there were, there is no caselaw supporting the validity of such a delegation order"); <u>Cruz</u>, 2026 WL 973367, at *3 ("[T]o the extent that § 241.4 provides the grounds for the revocation of [the petitioner's] OSUP . . ., there is no evidence that the revocation decision was made by an official vested with the requisite authority."). Respondents do not attempt to argue that Vernon L. Liggins had the authority to revoke Petitioner's release. (<u>See</u> Docket No. 7).

Therefore, the Court finds that the Petition should be granted with respect to Petitioner's claim that ICE violated federal law and Petitioner's right to procedural due process.[6]

**VI.**

**CONCLUSION**

IT THEREFORE IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Respondents to immediately release Petitioner Dalton Donovan Miller (A 043-721-663) from custody, subject to the terms of his 2016 OSUP, and the return of all property confiscated from him during his arrest and processing into detention; (3) enjoining Respondents and their officers, agents, employees, attorneys and persons acting on their behalf in concert or in participation with them, from:  (i) Re-detaining Petitioner without complying with all applicable statutes and regulations, including, without limitation, providing notice and an individualized pre-detention hearing before a neutral arbiter at which it is determined that detention is lawful and warranted under the applicable statutes and regulations either because Petitioner has violated a term of his Order of Supervision or because his removal from the United States is significantly likely in

---

[6]    The Court's determination that Petitioner is entitled to habeas relief on the fourth claim alleged in the Petition renders it unnecessary for the Court to address the other claims alleged in the Petition.

the reasonably foreseeable future, including that Respondents have procured travel documents for Petitioner and that such documents are in the possession of ICE; and (ii) removing Petitioner to any country without appropriate notice and an opportunity to be heard in accordance with any applicable ICE regulations, including the opportunity to assert a fear-based objection; and (4) Respondents shall file a status report within two (2) business days to confirm that Petitioner has been released from custody pursuant to this Order.

DATED: June 18, 2026

_____
DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE

13